

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JAMES MICHAEL ANDERSON, §
　　　　　　　　　　　　　§
　　　　Petitioner, §
　　　　　　　　　　　　　§
v. § No. 4:17-CV-669-A
　　　　　　　　　　　　　§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
　　　　　　　　　　　　　§
　　　　Respondent. §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, James Michael Anderson, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be dismissed as time-barred, in part, and denied, in part.

**I. BACKGROUND**

On January 28, 2016, in the 396th District Court, Tarrant County, Texas, Case Nos. 1400287D, 1400502D, 1400600D, 1404365D, and 1406598D, petitioner waived his right to a jury trial and entered open pleas of guilty to five counts of aggravated robbery with a deadly weapon to the trial court. Subsequently, on February 3, 2016, the trial court assessed petitioner's

punishment at 30 years' imprisonment in each case, the sentences to run concurrently. (SHR01[1] 31-38, doc. 19-8; SHR02 90-976, doc. 19-10; SHR03 90-97, doc. 19-12; SHR04 90-97, doc. 19-14; SHR05 91-98, doc. 19-16.) Petitioner appealed his convictions, but the appeal was dismissed as untimely. (Mem. Op. 4-6,[2] doc. 19-1.) Petitioner also filed five state habeas-corpus applications attacking his convictions. The first, challenging his conviction in Case No. 1400287D, was filed on September 30, 2016,[3] but was dismissed because his appeal remained pending at the time it was filed. (SHR01 Action Taken, doc. 19-6.) The record does not reflect that petitioner filed a second state application to challenge the conviction. The following four, challenging his remaining convictions, were filed on October 17, 2016, and were denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (SHR02 18 & Action Taken, docs. 19-6 & 19-9; SHR03 18 & Action Taken, docs. 18-11 & 19-12; SHR04 18 & Action Taken, docs. 19-13 & 19-14; SHR05 18 & Action Taken, docs. 19-15 & 19-16.) This federal habeas-corpus

---

[1] "SHR01" through "SHR05" refer to the court records of petitioner's state habeas-corpus applications in WR-85,988-01 through WR-85,988-05, respectively.

[2] The Electronic Record cited is not paginated; thus, the pagination in the ECF header is used.

[3] A state habeas application filed by a prisoner is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Petitioner's state applications do not, however, provide the dates he placed them in the prison mailing system. Thus, for purposes of this opinion, the applications are deemed filed on the dates the Inmate's Declarations were signed by petitioner.

petition, filed on August 11, 2017,[4] followed.

## II. ISSUES

Petitioner raises five grounds for relief, which were construed by respondent as follows:

(1) "[Petitioner's trial] [c]ounsel rendered ineffective assistance by failing to have him evaluated for competency and insanity.

(2) "[Petitioner's trial] [c]ounsel rendered ineffective assistance by failing to adequately investigate his history of mental illness.

(3) "[Petitioner's trial] [c]ounsel rendered ineffective assistance by failing to know and advise him of the law governing insanity and incompetency.

(4) "[Petitioner's] guilty plea was unknowing and involuntary due to counsel pressuring him to plead guilty and not properly advising him about the case.

(5) "[Petitioner's trial] [c]ounsel rendered ineffective assistance by failing to investigate his case."

(Pet. 6-7 & Attach., doc. 1; Resp't's Answer 2, doc. 17.)

## III. RULE 5 STATEMENT

Respondent asserts that petitioner's claims as they relate to his conviction in Case No. 1400287D are unexhausted and time-barred under the federal statute of limitations. Otherwise, she believes that petitioner's claims as they relate to his remaining convictions have been exhausted in state court and that the

---

[4]Likewise, an inmate's federal habeas petition is deemed filed when the document is placed in the prison mailing system. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

3

petition is neither successive nor untimely. (Resp't's Answer 4-5, 8-13, doc. 11.)

## IV. STATUTE OF LIMITATIONS

Title 28, United States Code, § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners. Section 2244(d) provides:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Under subsection (A), applicable in this case, the

4

limitations period began to run on the date on which the judgment of conviction became final "by the conclusion of direct review or the expiration of the time for seeking such review." For purposes of this provision, the trial court's judgment of conviction in Case No. 1400287D became final upon expiration of the time petitioner had for filing a timely notice of appeal on March 4, 2016.[5] *See* Tex. R. App. P. 68.2(a); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Therefore, limitations commenced the following day and closed one year later on Monday, March 6, 2016,[6] absent any tolling.

Tolling of the limitations period may be appropriate under the statutory provision in § 2244(d)(2) and/or as a matter of equity. Petitioner's relevant state habeas application filed on September 30, 2016, after limitations had already expired did not operate to toll the limitations period under the statutory provision. (SHR01 18, doc. 19-8.) *Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

For equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way'" and prevented him from filing a timely petition or he can make a "convincing

---

[5] 2016 was a leap year.

[6] March 4, 2017, was a Saturday.

5

showing" that he is actually innocent of the crime(s) for which he was convicted. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408 (2005)). To use actual innocence as a "gateway" to overcome the expiration of the statute of limitations, a petitioner is required to produce "new reliable evidence" that was not presented at trial and that is sufficient to persuade the district court that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *McQuiggin,* 569 U.S. at 399 (quoting *Schup v. Delo,* 513 U.S. 298, 327 (1995)). Petitioner did not address the limitations issue in his petition, file a response to respondent's answer addressing the issue, or otherwise raise, much less establish, an actual-innocence claim. Because petitioner has not shown that exceptional circumstances prevented him from filing a timely petition or shown himself to be actually innocent, equitable tolling is not justified.

Consequently, absent any applicable tolling, this petition as it relates to petitioner's aggravated robbery conviction in Case No. 1400287D is barred by the statute of limitations. The following discussion therefore applies only to his remaining convictions.

### V. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened

6

standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained

7

decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

## VI. DISCUSSION

Notwithstanding petitioner's claims, by entering a knowing, and voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings preceding the plea, including all nonjurisdictional defenses and claims of ineffective assistance of counsel that do not attack the knowing and voluntary character of the guilty plea. *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983); *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir. 1981). A guilty plea is knowing and voluntary if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States,* 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing and voluntary, it will be upheld on federal habeas review. *James v. Cain,* 56 F.3d 662, 666 (5th Cir. 1995).

Because petitioner's guilty pleas may have waived one or more of the claims presented, it is necessary to address the knowing and voluntary nature of his pleas first. The state habeas court conducted a hearing by affidavit, wherein petitioner's trial counsel, Greg Westfall, responded to one or more of petitioner's claims as follows:

8

I am an attorney licensed by the State of Texas and based in Fort Worth, Texas. . . . I am Board Certified in Criminal Law by the Texas Board of Legal Specialization and have been practicing criminal law since 1994.

In this capacity, I was appointed to represent [petitioner] in five aggravated robbery cases in the 396th. According to the allegations, during the course of an approximately 48-hour period in January, 2015, [petitioner] robbed five people in Tarrant County at knifepoint, driving a pickup truck he had stolen in the first robbery. One of the complainants was actually stabbed. There were two other extraneous cases out of Cooke County, where [petitioner] stopped on his way to the Winstar Casino in Oklahoma, where he was apprehended. [Petitioner] had been extradited to Texas to stand trial for the five aggravated robberies. The prosecutors were offering a 30 year sentence in exchange for a plea of guilty. [Petitioner] wanted 25 years. After having offered 25 years one day during the life of the case, the prosecutors refused to re-offer it. We were preparing for trial when [petitioner] stated he wanted to plead guilty in an open plea to Judge Gallagher. Ultimately, we proceeded in accordance with his wishes. . . .

In preparing for [petitioner]'s trial, I retained the services of Emily Fallis, Ph.D., who, independent of me, went to the jail and conducted a battery of tests on [petitioner] as well as conducted an interview. The following language is excerpted from Dr. Fallis' report:

**Timeline/Influences:**
Parents have limited education
Parents both drug abusers; and sell drugs
Mother does not have prenatal care
Mother continues to use drugs daily; meth, cocaine, marijuana
Father does not intervene in mother's drug use
Father does not offer to raise
Mother sought abortion
Rapid labor
Low birth weight
Born addicted as shown by tremors, twitching
Not breast-fed
After 10 days traded for drugs

Father continues drug use/criminal behavior
Great-grandmother cares for baby
Father often absent due to jail
No structure in home
Little discipline
Learns about mother's abandonment
Learns about father's criminality
Suicide attempt age 8/9
Psychiatric admission
Psychiatric medications
ADHD
Father stops medications apart from Strattera
Father main caretaker ages 10-16
Great-grandmother dementia
No discipline, no structure outside school
Early exposure to drugs
Early exposure to criminal lifestyle
Early use of drugs
Limited instilling of rules/mores/positive values
Early sexual activity
Behavioral problems: anger, impulsivity, labile emotions, attention-seeking, demanding, picking on younger, lying
Instability from 16: multiple schools, multiple living arrangements
Maternal siblings unstable/criminal behavior/ incarcerated

**From cognitive testing:**
Cognitive testing with the Reynolds Intellectual Assessment Scales (RIAS) indicates [petitioner]'s overall intellectual abilities fall in the Below Average range with a Composite Intelligence Index of 83 (true score 79-87 with 95% certainty). His Verbal Intelligence Index (VIX) of 88 (true score 84-93 with 95% certainty) falls in the low end of the Average range, while his Nonverbal Intelligence Index (NIX) of 81 (true score 76-87 with 95% certainty) falls in the Below Average range. The five-point difference between his VIX and NIX indicates his nonverbal and verbal abilities developed equivalently. The Composite Memory Index (CMX) of 97 (true score 91-104 with 95% certainty) indicates average immediate memory. The Speeded Processing Index (SPI) of 108 (true score 105-111 with 95% certainty) falls in the average range. Intratest scatter [1] on certain subtests indicates factors other than inherent ability affect the application of his intellectual abilities.

10

According to the VIX, [petitioner] has average ability to deduce or infer relationships and apply knowledge to problem solving, using words, and following the system of rules associated with a language, including language-comprehension skills. The NIX indicates he has below average ability to perceive, manipulate, or transform accurately the image of spatial patterns into other visual arrangements. Note that intratest scatter occurred on the nonverbal subtests, indicating difficulty concentrating limits his nonverbal abilities. According to the SPI, [petitioner] has average ability to perform tasks under time pressures. The CMX shows he has average ability to attend to a stimulus, register the stimulus in immediate memory, then recall or recognize the stimulus.

Other testing in the context of the history indicates [petitioner] has some mild neurological impairment in cognitive flexibility. This impairment may be due to early brain development but also could be due to his extensive substance abuse.

[1] Intratest scatter consists of correctly answering relatively difficult items while incorrectly answering relatively easy items within the same subtest.

**From Personality Assessment Inventory:**
Honest, non-defensive, not malingering
Impulsive, labile, self-destructive
Intense relationships marked by extremes and affected by serious abandonment issues
Confused, distractible
Fragile self-esteem, easily overwhelmed by changes in relationships
Poor identity development, little sense of future goals

Dr. Fallis and I went together to interview [petitioner]'s mother. We spent approximately two hours at her home in Weatherford and obtained some pictures and letters. I had [petitioner]'s sister, Brandy, benched up from her state jail unit to take part in the trial. I interviewed her at least twice. My associate and I went to [petitioner]'s father's apartment in west Fort Worth and interviewed him. Dr. Fallis, [petitioner]'s father and sister all testified at his trial.

11

> [Petitioner] had a very rough childhood and an extensive history with Child Protective Services, including placements in group homes. In preparing his case, I subpoenaed his CPS records and received almost 1800 pages, all of which I went through. I also forwarded all the records to Dr. Fallis. All of this information was before the judge in the open plea, including the fact that his mother traded his custody for a half-gram of methamphetamine when he was 10 days old. His father admitted under oath that he used to take [petitioner] with him to do drug deals. Dr. Fallis testified to all of it as a basis for her opinions about [petitioner]'s psychological condition. Several reports from the CPS records were put into evidence at his trial.
>
> There was no reason to believe [petitioner] was incompetent to stand trial, but if there were, I am sure that Dr. Fallis would have noticed it, as she spent several hours with [petitioner] in my absence when she conducted her interview and all her cognitive testing. [Petitioner]'s mental condition and life story were thoroughly investigated by both Dr. Fallis and me and were presented to the court. There was no evidence of a mental condition at the time of the offense that would meet the legal definition of insanity.

(SHR02 33, doc. 19-10.)

Based on the documentary record, counsel's affidavit, and his own recollection of the plea proceedings, including petitioner's demeanor in court, the state habeas judge entered factual findings, which were later adopted by the Texas Court of Criminal Appeals. Although numerous, the following findings of fact are relevant to the discussion:

11. [Petitioner] was evaluated for mental competency at a magistrate's request in October, 2015.

12. There was no "clinical evidence to support a belief that [petitioner] may [have been] incompetent to stand trial and should [have undergone] a complete competency examination.

13. [Petitioner] presents no evidence that he did not have a rational or factual understanding of the proceedings against him.

14. [Petitioner] presents no evidence that he did not have the sufficient present ability at the time of his plea to consult with his lawyer with a reasonable degree of factual understanding.

. . .

19. In preparation for trial, Mr. Westfall retained Dr. Emily Fallis to evaluate [petitioner]'s mental health.

20. Dr. Fallis visited [petitioner] at the jail and conducted a battery of testing on him.

21. Dr. Fallis interviewed [petitioner].

22. Dr. Fallis found no evidence that [petitioner] was incompetent to stand trial . . . .

. . .

33. Mr. Westfall and Dr. Fallis thoroughly investigated [petitioner]'s mental conditions and life story.

. . .

37. Dr. Fallis testified regarding [petitioner]'s history as the basis for her opinions regarding his psychological condition.

38. Mr. Westfall found no reason to believe [petitioner] was incompetent to stand trial.

. . .

43. When Mr. Westfall was preparing for trial, [petitioner] decided he want[ed] to plead guilty.

44. Because [petitioner] did not want to take the State's thirty year plea offer, and the State refused to re-offer a twenty-five year plea offer, [petitioner] decided to make an open plea of guilty to the trial court.

45. The trial court accepted [petitioner]'s open plea and sentenced him to the same thirty years as offered by the State.

46. Mr. Westfall's affidavit is credible and supported by the record.

47. [Petitioner] acknowledged by his signature that he was mentally competent.

48. [Petitioner] acknowledged by his signature that his plea was "knowingly, freely, and voluntarily" entered.

49. [Petitioner] acknowledged by his signature that "[n]o one ha[d] threatened, coerced, forced, persuaded or promised [him] anything in exchange for [his] plea."

50. Mr. Westfall acknowledged by his signature that he found [petitioner] to be legally competent.

51. This Court orally admonished [petitioner] and found him to be mentally competent.

52. There is evidence that [petitioner] appeared competent to plead guilty.

53. There is no credible evidence that [petitioner] did not have a rational or factual understanding of the proceedings against him.

54. There is no credible evidence that [petitioner] failed to have the sufficient present ability at the time of his plea to consult with his lawyer with a reasonable degree of factual understanding.

(SHR02 35-39, doc. 19-10 (record citations omitted).)

A criminal defendant who is incompetent cannot enter a knowing and voluntary guilty plea. *See Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983). As articulated by the United States Supreme Court, the test to determine a person's competency to stand trial is "whether he has the sufficient present ability to

14

consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Texas has clearly adopted the same rule, but adds that a "defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. ANN. art. 46B.003 (West 2006). Based on its factual findings, and applying state law in conjunction with *Strickland*'s attorney-performance standard, the state habeas court reached the following legal conclusions:

> 7. Mr. Westfall properly hired an expert to evaluate [petitioner]'s mental health status.
>
> 8. [Petitioner] has failed to prove that counsel did not have him evaluated for competency and insanity.
>
> 9. Mr. Westfall properly investigated [petitioner]'s history of mental illness.
>
> . . .
>
> 11. "(a) A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person.
>
>     (b) A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence."
>
> 12. [Petitioner] has failed to overcome the

>    presumption that he was competent to stand trial.
>
> 13. Mr. Westfall's decision to not raise an incompetency claim was the result of reasonable trial strategy.

(Id. at 40-43 (citations omitted).)

Petitioner has not presented any evidence in rebuttal of the state courts' factual findings. 28 U.S.C. § 2254(e)(1). Thus, this court must apply the presumption of correctness to those findings. Having done so, petitioner's claims implicating his competency to stand trial and the voluntary and knowing character of his guilty pleas are groundless. Petitioner offers no medical or psychiatric records to refute the state courts' determination that he was competent to enter his guilty pleas and nothing in the record suggests that petitioner did not do so voluntarily with the knowledge and understanding of the circumstances and consequences surrounding his pleas.[7] Conclusory and unsupported allegations in petitioner's pleadings are insufficient to warrant habeas relief. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (providing "[a]bsent evidence in the record, a court cannot consider a petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative value").

Further, the record indicates that based on the trial

---

[7] The record does indicate that petitioner suffers from bipolar disorder, however the mere presence of a mental illness does not demonstrate mental incompetence to stand trial. (SHR0280, doc. 19-10.) *See Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir. 1976).

court's and counsel's interaction with petitioner, both the court and counsel were clearly under the opinion that petitioner was competent to stand trial and that his pleas were made with sufficient awareness of the circumstances and consequences of pleading guilty. Petitioner reinforced that belief by executing the written plea admonishments acknowledging that he was aware of the consequences of his pleas; that he was mentally competent and his pleas were "knowingly, freely, and voluntarily entered"; that no one "threatened, coerced, forced, persuaded or promised" him anything in exchange for his pleas; and that counsel "provided [him] fully effective and competent representation." (SHR02 94, doc. 19-10.) Such representations by a defendant during plea proceedings "carry a strong presumption of verity." *Blackledge v. Allison* 431 U.S. 63, 74 (1977). Petitioner's self-serving assertions, after the fact, are in and of themselves inadequate to rebut the presumption that he received effective assistance of counsel, the presumption that his pleas were knowing and voluntary, and the presumption of regularity of the state-court records. *See Drinkard v. United States,* 302 F.3d 279, 284 (5th Cir. 2011) (giving statements during plea colloquy greater weight than "unsupported, after-the-fact, self-serving revisions"); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state-court records "are entitled to a presumption of regularity"). *See also, e.g., Panuccio v. Kelly,* 927 F.2d 106,

109 (2d Cir. 1991) (a defendant's testimony after the fact suffers from obvious credibility problems).

Petitioner's valid guilty pleas operate as a waiver of his remaining claims. *See, e.g., United States v. Bendicks,* 449 F.2d 313, 315 (5th Cir. 1971) (holding the defense of insanity at the time of the offense is a nonjurisdictional defect waived by valid guilty plea); *Simmons v. Davis,* No. 4:15-CV-260-A, 2017 WL 543210 (N.D.Tex. Feb. 9, 2017) (providing ineffective-assistance claim that counsel failed to adequately investigate is nonjurisdictional and waived by valid guilty plea).

For the reasons discussed herein,

It is ORDERED that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed as time-barred as it relates to his state-court conviction in Case No. 1400287D and denied as it relates to his state-court convictions in Case Nos. 1400502D, 1400600D, 1404365D, and 1406598D. It is further ORDERED that a certificate of appealability be, and is hereby denied as petitioner has not made a showing that reasonable jurists would question this court's resolution of petitioner's constitutional claims and/or procedural rulings.

SIGNED December __13__, 2018.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE